# EXHIBIT Q



COLIN CABRAL (SBN 296913)
JAMES ANDERSON (BBO # 693781)
Proskauer Rose LLP
One International Place
Boston, MA 02110
ccabral@proskauer.com
jaanderson@proskauer.com
Telephone:  617-526-9600

ELIZABETH SHRIEVES (DC #1645332)
Proskauer Rose LLP
1001 Pennsylvania Ave, N.W., Suite 600 South
Washington, DC 20004
eshrieves@proskauer.com
Telephone:  202-416-6800

SETH H. VICTOR (SBN 329341)
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
svictor@proskauer.com
Telephone:  310-557-2900

*Attorneys for Plaintiffs*
*Globus Medical, Inc. and NuVasive, LLC*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| GLOBUS MEDICAL, INC. and NUVASIVE, LLC, | Case No. 3:25-cv-01522-CAB-DDL _____ |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| ALPHATEC SPINE, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |
| | Date:  ~~June 12, 2025~~ January 5, 2026 |

Plaintiffs Globus Medical, Inc. ("Globus") and NuVasive, LLC ("NuVasive") (collectively "Plaintiffs") bring this action for infringement of United States Patent Nos. 8,357,184; 9,050,146; ~~10,660,628;~~ 8,556,979; 8,518,120~~; 9,039,771~~; 9,204,974; and 11,890,203 (collectively, the "Asserted Patents") against Defendant Alphatec Spine, Inc. ("ATEC"), and alleges as follows:

## THE PARTIES

1.      Plaintiff Globus Medical, Inc. is a Delaware corporation with its principal place of business located at 2560 General Armistead Avenue, Audubon, Pennsylvania, 19403.

2.      Plaintiff NuVasive, LLC is a Delaware limited liability company with its principal place of business at 7475 Lusk Boulevard, San Diego, California 92121. NuVasive operates as a wholly-owned subsidiary of Plaintiff Globus Medical, Inc.

3.      On or about February 29, 2024, NuVasive, Inc. converted from a Delaware corporation to a Delaware limited liability company, and changed its name from NuVasive, Inc. to NuVasive, LLC.

4.      On information and belief, Defendant Alphatec Spine, Inc. is a California corporation with its principal place of business at 1950 Camino Vida Roble, Carlsbad, California 92008.

5.      On information and belief, Defendant Alphatec Spine, Inc. operates as a wholly-owned subsidiary of Alphatec Holdings, Inc.

## JURISDICTION AND VENUE

6.      This Complaint arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 35 U.S.C. § 271 et seq., 28 U.S.C. §§ 1331 and 1338(a).

7.      The Court has personal jurisdiction over ATEC because ATEC is a California corporation that transacts substantial business in the State of California, regularly does or solicits business in California, has committed acts in California giving rise to the causes of action alleged in this Complaint, maintains continuous and

systematic contacts in California, purposefully avails itself of the privileges of doing business in California, and derives substantial revenue from goods and services provided to individuals in California.  In addition, ATEC is registered to do business in the State of California and maintains an agent for service of process in California.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because ATEC resides in this District, has committed acts of infringement, and has a regular and established place of business in this District.

## FACTUAL BACKGROUND

### A.    Plaintiffs' Patented Technologies

9.    Plaintiffs are market-leading innovators in spinal fusion technologies. Prior to its acquisition by Globus in September of 2023, NuVasive pioneered the market for minimally invasive spine surgery and interbody fusion procedures.  Since the acquisition, Globus has continued to further innovate and develop minimally invasive and interbody fusion techniques.

10.    Plaintiffs have invested significant resources in the research and development of their implant and instrument products for Transforaminal Lumbar Interbody Fusion (TLIF) and Lateral Lumbar Interbody Fusion (LLIF) spinal fusion techniques.

11.    In a TLIF procedure, the intervertebral disc space is accessed and operated on through a posterolateral approach.

12.    In an LLIF procedure, the intervertebral disc space is accessed and operated on from the side of a patient's body.

13.    In an effort to protect its innovations in these areas, Plaintiffs have filed and prosecuted patent applications, including those that later issued as the Asserted Patents.

14.    On January 22, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,357,184 (the "'184 patent"), entitled "Method and Apparatus for Performing Spinal Surgery" to Troy Woolley, Nathan Lovell, Michael

Serra, and Mark Peterson.  A true and correct copy of the '184 patent is attached hereto as **Exhibit A**.

15.    At all relevant times, NuVasive is and has been the owner, by valid assignment, of all right, title, and interest in and to the '184 patent.

16.    The '184 patent is directed to methods for performing surgical spine procedures, including attaching an interbody fixation system to a patient's spine.

17.    On June 9, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,050,146 (the "'146 patent"), entitled "Method and Apparatus for Performing Spinal Surgery" to Troy Woolley, Nathan Lovell, Michael Serra, and Mark Peterson.  A true and correct copy of the '146 patent is attached hereto as **Exhibit B**.

18.    At all relevant times, NuVasive is and has been the owner, by valid assignment, of all right, title, and interest in and to the '146 patent.

19.    The '146 patent is directed to a posterior spinal retractor system for use in a spinal surgical procedure.

20.    On May 26, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,660,628 (the "'628 patent"), entitled "Minimally Disruptive Retractor and Associated Methods for Spinal Surgery" to Casey James O'Connell, James Coleman Lee, and Ali A. Shorooghi. A true and correct copy of the '628 patent is attached hereto as **Exhibit C**.

21.    At all relevant times, NuVasive is and has been the owner, by valid assignment, of all right, title, and interest in and to the '628 patent.

22.    The '628 patent is directed to methods for performing surgical spine procedures, including attaching an interbody fixation system to a patient's spine.

23.20. On October 15, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,556,979 (the "'979 patent"), entitled "Expandable Fusion Device and Method of Installation Thereof" to Chad Glerum, Sean Suh, and

Mark Weiman. A true and correct copy of the '979 patent is attached hereto as **Exhibit DC**.

24.21.At all relevant times, Globus is and has been the owner, by valid assignment, of all right, title, and interest in and to the '979 patent.

25.22.The '979 patent is directed to an expandable fusion device that can be installed during a surgical spine procedure for spinal stability.

26.23.On August 27, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,518,120 (the "'120 patent"), entitled "Expandable Fusion Device and Method of Installation Thereof" to Chad Glerum, Sean Suh, and Mark Weiman. A true and correct copy of the '120 patent is attached hereto as **Exhibit ED**.

27.24.At all relevant times, Globus is and has been the owner, by valid assignment, of all right, title, and interest in and to the '120 patent.

28.25.The '120 patent is directed to an expandable fusion device that can be installed during a surgical spine procedure for spinal stability.

29.    On May 26, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,039,771 (the "'771 patent"), entitled "Expandable Fusion Device and Method of Installation Thereof" to Chad Glerum, Sean Suh, and Mark Weiman. A true and correct copy of the '771 patent is attached hereto as Exhibit F.

30.    At all relevant times, Globus is and has been the owner, by valid assignment, of all right, title, and interest in and to the '771 patent.

31.    The '771 patent is directed to methods of installing an expandable fusion device during a surgical spine procedure for spinal stability.

32.26.On December 8, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,204,974 (the "'974 patent"), entitled "Expandable Fusion Device and Method of Installation Thereof" to Chad Glerum, Sean Suh, and

Mark Weinman. A true and correct copy of the '974 patent is attached hereto as **Exhibit ~~G~~E**.

~~33.~~27. At all relevant times, Globus is and has been the owner, by valid assignment, of all right, title, and interest in and to the '974 patent.

~~34.~~28. The '974 patent is directed to an expandable fusion device that can be installed during a surgical spine procedure for spinal stability.

~~35.~~29. On February 6, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,890,203 (the "'203 patent"), entitled "Expandable Fusion Device and Method of Installation Thereof" to Chad Glerum, Mark Weiman, Andrew Iott, and Mark Adams. A true and correct copy of the '203 patent is attached hereto as **Exhibit ~~H~~F**.

~~36.~~30. At all relevant times, Globus is and has been the owner, by valid assignment, of all right, title, and interest in and to the '203 patent.

~~37.~~31. The '203 patent is directed to an expandable fusion device that can be installed during a surgical spine procedure for spinal stability.

## B. NuVasive's MAS TLIF Products

~~38.~~32. NuVasive invented systems and methods for performing TLIF procedures, including as part of a spinal fusion procedure known as Maximum Access Surgery Transforaminal Lumbar Interbody Fusion ("MAS TLIF").

~~39.~~33. Plaintiffs sell implants and instruments to practice MAS TLIF surgeries. NuVasive's MAS TLIF systems includes a retractor as well as various bone anchor fixation systems (Percept Modular, SpheRx DBR III Modular, among others) and interbody implants (Coroent TLIF, Modulus TLIF, and Cohere TLIF families of implants). MAS TLIF is designed to provide the benefits of minimally invasive procedures while ameliorating many of the associated challenges for the surgeon.

~~40.~~34. At a high level, MAS TLIF uses a retractor with blades that anchor to the patient's vertebrae and can distract the intervertebral disc space. The anchored retractor blades help keep the operative corridor secure during the surgical procedure and act as

fixed anatomical landmarks for the surgeon. In other words, the operative window at the surgical target site does not move even if the position of the retractor body or angle of the retractor blades changed. A further advantage is that the retractor functions not only as a soft tissue retractor but also may function as a distracter capable of moving the adjacent vertebrae apart in order to distract the intervertebral disc space in a caudal-cranial direction. This allows the surgeon to open the intervertebral disc space and place an implant. These benefits help overcome challenges associated with traditional TLIF procedures.

41.35. After establishing an operative corridor with the retractor, the surgeon then removes at least a portion of the intervertebral disc and inserts an intervertebral implant. Once the implant is in place, the bone anchors are connected with a rod, which help to stabilize the spine while the patient heals.

42.36. Plaintiffs have expended substantial capital and human resources in developing its innovations and in the commercialization of MAS TLIF.

43.37. In compliance with 35 U.S.C. § 287(a), Plaintiffs mark their MAS TLIF products with their patents, including the '184 and '146 patents. *See* https://www.globusmedical.com/musculoskeletal-solutions/patents/.

**C.    ATEC's Accused Sigma Access System and Inserter Systems**

44.38. ATEC launched its Sigma Access System on or around October 6, 2020. ATEC launched various bone anchor systems, including the SingleStep, Invictus, Invictus MIS Modular, and Arsenal; and ATEC launched various interbody implants including the IdentiTi-PC, IdentiTi-PO, Battalion PC, and Novel Tapered TL.

45.39. ATEC's products bear a striking resemblance to NuVasive's patented MAS TLIF system.  The Sigma retractor and ATEC's bone anchor fixation systems are virtually identical to those developed and sold by NuVasive.

| Plaintiff's MAS TLIF | ATEC Sigma Access System |
|---|---|
|  |  |

### D.    Globus's Expandable Lumbar Fusion Products

46.40. Globus invented systems and methods for performing LLIF procedures and provides them for use as part of spinal fusion procedures, as well as devices for performing the surgeries.  These devices include the CALIBER-L™ Lateral Lumbar Interbody Fusion Spacer.  Globus's expandable spacer products are designed for use during spinal procedures to be inserted and expanded *in situ*. They are designed to provide the benefits of minimally invasive procedures while ameliorating many of the associated challenges for the surgeon.

47.41. Globus expended substantial capital and human resources in developing its innovations and in the commercialization of its CALIBER-L™ spacer products.

48.42. In compliance with 35 U.S.C. § 287(a), Globus marks CALIBER-L™ spacer products with its patents, including the '979, '120, '771, '974, and '203 patents. *See* https://www.globusmedical.com/musculoskeletal-solutions/patents/.

### E.    ATEC's Accused Calibrate LTX Systems

~~49.~~43. ATEC launched its Calibrate™ LTX system on or around October 16, 2023.  *See* https://investors.alphatecspine.com/press-releases/news-details/2023/ATEC-Advances-Lateral-Surgery-With-Launch-of-Expandable-Technology/default.aspx.

~~50.~~44. ATEC's Calibrate LTX products bear a striking resemblance to the patented CALIBER-L™ spacer.  They are functionally identical to those developed and sold by Globus.

| Plaintiff's CALIBER-L Spacer | ATEC Calibrate LTX product |
|---|---|
|  | |

### F.    ATEC's Knowledge of the Asserted Patents

~~51.~~45. Many current and former employees of ATEC were once employed by NuVasive and, on information and belief, have knowledge of NuVasive's intellectual property and patent portfolio.

~~52.~~46. Patrick Miles was employed by NuVasive as an executive from 2001 through September of 2017, most recently serving as President and COO from 2015–16 and rising to Vice Chairman in September of 2016. While at NuVasive, Mr. Miles was involved with and aware of NuVasive's product development and patented technology relating to spinal surgical systems.

53.47. On information and belief, Mr. Miles was aware of the research, development, commercialization, and marketing of NuVasive's MAS TLIF procedure.

54.48. Mr. Miles worked at NuVasive when the '184 and '146 patents were filed.

55.49. On September 29, 2017, ATEC hired Mr. Miles to serve as its Executive Chairman. Mr. Miles currently serves as ATEC's Chief Executive Officer.

56.50. Brian Snider was employed at NuVasive from 2008 to 2017, rising to the level of Business Lead of Thoracolumbar Anterior, which included responsibility for the anterior column business.

57.51. While at NuVasive, Mr. Snider was involved with and aware of NuVasive's patented technology relating to spinal surgical systems.

58.52. On March 24, 2017, ATEC hired Mr. Snider as Executive Vice President, Strategic Marketing and Product Development.

59.   Before launching the Sigma Access system, ATEC hired James Lee and Ali Shorooghi, both of whom previously worked for NuVasive. Both are named inventors on the '628 patent.

60.   On information and belief, ATEC had actual notice of the '628 patent, for example, through Mr. Lee and Mr. Shorooghi.

61.53. On information and belief, ATEC has been monitoring and continues to monitor NuVasive's patent portfolio, including the '628, '184, and '146 patents.

62.54. On information and belief, ATEC had actual and constructive knowledge of the '184 patent prior to the filing of this the initial Complaint.

63.55. On information and belief, ATEC had actual knowledge of the '184 patent as early as December 12, 2013, as evidenced by ATEC's submission of an Information Disclosure Statement identifying the published application that would become the '184 patent to the U.S. Patent and Trademark Office, which occurred on December 12, 2013, in connection with the prosecution of ATEC's U.S. Patent No. 8,906,034.

9

64.56. On information and belief, ATEC also had knowledge of the '184 patent through its employment relationship with Mr. Miles, Mr. Snider, and other former NuVasive employees.

65.57. On information and belief, ATEC had actual and constructive knowledge of the '146 patent prior to the filing of this the initial Complaint.

66.58. On information and belief, ATEC has been monitoring and continues to monitor NuVasive's patent portfolio, including patents such as the '146 patent.

67.59. On information and belief, ATEC had knowledge of the '146 patent as early as January 18, 2018, as evidenced by an office action identifying the published application that would become the '146 patent as a reference that was considered by the examiner, which occurred on January 18, 2018, in connection with the prosecution of ATEC's U.S. Patent No. 10,028,772.

68.60. On information and belief, ATEC also gained knowledge of the '146 patent through its employment of Mr. Miles, Mr. Snider, and/or other former NuVasive employees.

61. On June 12, 2025, Plaintiffs filed the initial complaint in this action, alleging that ATEC infringed U.S. Patent Nos. 8,357,184; 9,050,146; 8,556,979; 8,518,120; 9,204,974; and 11,890,203. ATEC had actual notice of each of the Asserted Patents as least as of the filing date of the original complaint.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 8,357,184

69.62. Plaintiffs repeat and reallege the allegations within the foregoing paragraphs in their entirety.

70.63. ATEC has infringed and continues to infringe at least claim 1 of the '184 patent by making, using, selling, and/or offering for sale products and systems including, but not limited to the Sigma Access System, Single Step fixation system, Invictus fixation system, Invictus MIS Modular fixation system, and Arsenal fixation

system (the "Accused Retractor Products"), which are used by spinal surgeons in an infringing manner.

~~71.~~64. Claim 1 of the '184 patent recites:

> A method for attaching a fixation system to the spine of a patient, the fixation system including at least two bone anchors and a spinal rod linking the at least two bone anchors, comprising the steps of:
>
> connecting a first bone anchor to a first retractor blade, advancing the first bone anchor and first retractor blade together to a first spinal vertebra, and anchoring the first bone anchor through a pedicle of the first spinal vertebra;
>
> connecting a second bone anchor to a second retractor blade, advancing the second bone anchor and second retractor blade together to a second spinal vertebra, and anchoring the second bone anchor through a pedicle of the second vertebra, wherein the second vertebra is separated from the first vertebra by an intervertebral disc space and the first vertebra, second vertebra, and intervertebral disc space comprise a first spinal level;
>
> connecting a retractor body to the first retractor blade and the second retractor blade and operating the retractor body to expand an operative corridor formed between the first retractor blade and second retractor blade from the skin level of the patient to the spine;
>
> adjusting the angle of the operative corridor until the operative corridor is parallel to the intervertebral disc; and
>
> linking the first bone anchor and the second bone anchor with the spinal rod.

~~72.~~65. An exemplary claim chart showing how the exemplary accused Sigma and Invictus systems are used to perform every step of asserted claim 1 of the '184 patent is attached as **Exhibit ~~I~~G**.

66.    ATEC publishes product literature and videos that depict the use of the Accused Retractor Products, examples of which are cited below, including screenshots from ATEC's product videos.  The product literature and videos direct and instruct surgeons in the use of the Accused Retractor Products as a method for attaching a fixation system to the spine of a patient, the fixation system including at least two bone anchors and a spinal rod linking the at least two bone anchors.

11



https://vimeo.com/470390710

67.    The product literature and videos instruct surgeons to use the Accused Retractor Products to connect a first bone anchor to a first retractor blade, advance the first bone anchor and first retractor blade together to a first spinal vertebra, and anchor the first bone anchor through a pedicle of the first spinal vertebra.



https://vimeo.com/470390710

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

68.    The product literature and videos instruct surgeons to use the Accused Retractor Products to connect a second bone anchor to a second retractor blade, advance the second bone anchor and second retractor blade together to a second spinal vertebra, and anchor the second bone anchor through a pedicle of the second vertebra, wherein the second vertebra is separated from the first vertebra by an intervertebral disc space and the first vertebra, second vertebra, and intervertebral disc space comprise a first spinal level.



https://vimeo.com/470390710

69.    The product literature and videos instruct surgeons to use the Accused Retractor Products to connect a retractor body to the first retractor blade and the second retractor blade and operate the retractor body to expand an operative corridor formed between the first retractor blade and second retractor blade from the skin level of the patient to the spine.

13



https://vimeo.com/470390710

70.     The product literature and videos instruct surgeons to use the Accused Retractor Products to adjust the angle of the operative corridor until the operative corridor is parallel to the intervertebral disc.



https://vimeo.com/470390710

14

71.    The product literature and videos instruct surgeons to use the Accused Retractor Products to link the first bone anchor and the second bone anchor with the spinal rod.



Visual Indicator of Sufficient Rod Overhang

https://vimeo.com/470390710

73.72.In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '184 patent.

74.73.As explained above, on information and belief, ATEC had actual knowledge of the '184 patent prior to the filing of this Complaint. Additionally, by virtue of the filing of this Complaint, ATEC has actual knowledge of the '184 patent and knowledge that it is infringing the '184 patent and is, therefore, liable for future indirect infringement.the initial Complaint.

75.74.With knowledge of the '184 patent, ATEC has and continues to induce infringement of claim 1 of the '184 patent by others, including surgeons, by actively encouraging them to use the Accused Retractor Products in an infringing manner, with

the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '184 patent.

76.75. On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Retractor Products, knowing, or being willfully blind to, the fact that the induced actions constitute infringement of the '184 patent.

77.76. ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '184 patent.

78.77. ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Retractor Products; (2) teaching, instructing, and training surgeons how to use the Accused Retractor Products; and (3) supplying one or more components of the Accused Retractor Products.

78.    For example, ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Retractor Products in a manner that constitutes infringement of the '184 patent. **Exhibit H**. The IFUs provide that the Accused Retractor Products are "designed to provide access and exposure to the spine for the performance of surgical procedures." *Id.* The IFUs also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to "have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Retractor Products in an operation on a patient. *Id.*

79.    ATEC also publishes product literature that instructs surgeons on the use of the Accused Retractor Products. For example, product literature for the Invictus spinal fixation system notes that the Accused Retractor Products are "pedicle-based access system[s] that provid[e] direct visualization of key anatomical landmarks creating a reproducible, minimally disruptive, customized TLIF approach," which "pairs seamlessly with the Invictus MIS Modular System." **Exhibit I** at 4. The

16

literature also includes testimonials from orthopedic surgeons describing the use of the Accused Retractor Products during specific spinal surgery procedures and encouraging the use of the Accused Retractor Products because they "allow[ed the surgeon] to customize [their] exposure and reproducibly and efficiently perform a TLIF. The simplified instrumentation drives efficiency and confidence, especially during tulip attachment at the end of the case." *Id.* On information and belief, ATEC also publishes surgical technique guides that include additional instructions for surgeons to perform procedures with the Accused Retractor Products consistent with the IFUs.

80. ATEC also instructs surgeons on the use of the Accused Retractor Products in videos accessible from the company's website and on video-hosting sites such as YouTube and Vimeo. *See* https://www.youtube.com/watch?v=VsukbqjvmkU; https://vimeo.com/470390710. The videos demonstrate the use of the Accused Retractor Products with ATEC's spinal fixation product lines, including the Invictus spinal fixation system. The claim chart attached as **Exhibit G** includes screenshots that show how the videos direct surgeons to use the Accused Retractor Products in an infringing manner.

79.81. On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Retractor Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the asserted claims.

80.82. On information and belief, ATEC purposefully designed each of the infringing components of the Accused Retractor Products as part of the Accused Retractor Products for use in performing the infringing surgical spine procedure and for no other purpose.

81.83. In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Retractor Products where such components are uncombined in whole or in part, in such a manner to actively induce

the combination of such components outside of the United States in a manner that practices at least claim 1 of the '184 patent.

82.84. ATEC's affirmative acts of active inducement abroad include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Retractor Products; (2) teaching, instructing, and training surgeons how to use the Accused Retractor Products; and (3) supplying one or more components of the Accused Retractor Products, in all instances to induce the combination of the components in an infringing manner abroad.

83.85. Unless enjoined by this Court, ATEC will continue to infringe the '184 patent, and NuVasive will continue to suffer irreparable harm for which there is no adequate remedy at law.

84.86. As a result of ATEC's infringement of one or more claims of the '184 patent, NuVasive has been and continue to be injured in their business and property rights and are entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

85.87. On information and belief, at all times that infringement has occurred or will occur, ATEC had and has actual and/or constructive knowledge of the '184 patent.

86.88. On information and belief, ATEC's infringement of one or more claims of the '184 patent is and has been willful and deliberate.

87.89. NuVasive is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,050,146

88.90. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

18

89.91. On information and belief, ATEC has infringed and continues to infringe at least claim 1 of the '146 patent by making, using, selling, and/or offering for sale the Accused Retractor Products.

90.92. Claim 1 of the '146 patent recites:

A posterior spinal retractor for a maintaining an access corridor to a site along the posterior spinal column on which a surgical procedure is performed, the surgical procedure including the use of first and second bone anchors anchorable into first pedicle of a first vertebra and a second pedicle of a second vertebra, respectively, comprising:

a retractor having a first arm, a first retractor blade attachable to the first arm and having a distal end and a proximal end, a second arm, and a second retractor blade attachable to the second arm and having a distal end and a proximal end, the first arm and the second arm being movable relative to each other in a first direction;

wherein the distal end of the first retractor blade is temporarily anchorable in position relative to the first pedicle via coupled engagement with the first bone anchor, the coupled engagement permitting angular adjustability of the distal end relative to the first bone anchor and the proximal end of the first retractor blade is pivotable relative to the first arm, and wherein the distal end of the second retractor blade is temporarily anchorable in position relative to the second pedicle via coupled engagement with the second bone anchor, the coupled engagement permitting angular adjustability of the distal end relative to the second bone anchor and the proximal end of the second retractor blade is pivotable relative to the second arm; and

a third retractor blade moveable relative to the first and second retractor blades in a second direction orthogonal to the first direction.

91.93. In violation of 35 U.S.C. § 271(a), ATEC has and continues to directly infringe one or more claims of the '146 patent.

92.94. In particular, and without limitation, ATEC directly infringes the '146 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to the Sigma Access System, Single Step fixation system, Invictus fixation system, Invictus MIS Modular fixation system, and Arsenal fixation system, without authorization.

93.95. An exemplary claim chart showing how the accused Sigma and Invictus products meet every element of claim 1 of the '146 patent is attached as **Exhibit J**.

96.    ATEC publishes product literature and videos that depict the use of the Accused Retractor Products, examples of which are cited below, including screenshots

19

from ATEC's product videos. The product literature and videos direct and instruct surgeons in the use of the Accused Retractor Products as a posterior spinal retractor for a maintaining an access corridor to a site along the posterior spinal column on which a surgical procedure is performed, the surgical procedure including the use of first and second bone anchors anchorable into first pedicle of a first vertebra and a second pedicle of a second vertebra, respectively.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  https://vimeo.com/470390710

17

18    97.    The product literature and videos instruct surgeons to use the Accused
19  Retractor Products which include a retractor having a first arm, a first retractor blade
20  attachable to the first arm and having a distal end and a proximal end, a second arm,
21  and a second retractor blade attachable to the second arm and having a distal end and a
22  proximal end, the first arm and the second arm being movable relative to each other in
23  a first direction.

24
25
26
27
28



https://vimeo.com/470390710

98.    The product literature and videos instruct surgeons to use the Accused Retractor Products which include a distal end of the first retractor blade that is temporarily anchorable in position relative to the first pedicle via coupled engagement with the first bone anchor, the coupled engagement permitting angular adjustability of the distal end relative to the first bone anchor and the proximal end of the first retractor blade is pivotable relative to the first arm, and wherein the distal end of the second retractor blade is temporarily anchorable in position relative to the second pedicle via coupled engagement with the second bone anchor, the coupled engagement permitting angular adjustability of the distal end relative to the second bone anchor and the proximal end of the second retractor blade is pivotable relative to the second arm.



https://vimeo.com/470390710

99.    The product literature and videos instruct surgeons to use the Accused Retractor Products which include a third retractor blade moveable relative to the first and second retractor blades in a second direction orthogonal to the first direction.

https://vimeo.com/470390710

94.100.    In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least the asserted claims of the '146 patent.

95.101.    As explained above, on information and belief ATEC had actual knowledge of the '146 patent prior to the filing of ~~this Complaint. Additionally, by virtue of the filing of this Complaint, ATEC has actual knowledge of the '146 patent and knowledge that it is infringing the '146 patent and is, therefore, liable for future indirect infringement.~~the initial Complaint.

96.102.    With knowledge of the '146 patent, ATEC has and continues to induce jointly and separately the direct infringement of the '146 patent by others, including surgeons, by actively encouraging them to use the Accused Retractor Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the asserted claims of the '146 patent.

97.103.    On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Retractor Products, knowing, or being

24

willfully blind to the fact, that the induced actions constitute infringement of the '146 patent.

98.104.     ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '146 patent.

99.105.     ATEC's affirmative acts of active encouragement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Retractor Products which includes the; (2) teaching, instructing, and training surgeons how to use the Accused Retractor Products; and (3) supplying one or more components of the Accused Retractor Products.

106.   For example, ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Retractor Products in a manner that constitutes infringement of the '146 patent.  **Exhibit H.**  The IFUs provide that the Accused Retractor Products are "designed to provide access and exposure to the spine for the performance of surgical procedures." *Id.*  The IFUs also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to "have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Retractor Products in an operation on a patient. *Id.*

107.   ATEC also publishes product literature that instructs surgeons on the use of the Accused Retractor Products.  For example, product literature for the Invictus spinal fixation system notes that the Accused Retractor Products are "pedicle-based access system[s] that provid[e] direct visualization of key anatomical landmarks creating a reproducible, minimally disruptive, customized TLIF approach," which "pairs seamlessly with the Invictus MIS Modular System."  **Exhibit I** at 4.  The literature also includes testimonials from orthopedic surgeons describing the use of the Accused Retractor Products during specific spinal surgery procedures and encouraging the use of the Accused Retractor Products because they "allow[ed the surgeon] to

25

customize [their] exposure and reproducibly and efficiently perform a TLIF.  The simplified instrumentation drives efficiency and confidence, especially during tulip attachment at the end of the case." *Id.*  On information and belief, ATEC also publishes surgical technique guides that include additional instructions for surgeons to perform procedures with the Accused Retractor Products consistent with the IFUs.

108.   ATEC also instructs surgeons on the use of the Accused Retractor Products in videos accessible from the company's website and on video-hosting sites such as YouTube and Vimeo.   *See* https://www.youtube.com/watch?v=VsukbqjvmkU; https://vimeo.com/470390710.   The videos demonstrate the use of the Accused Retractor Products with ATEC's spinal fixation product lines, including the Invictus spinal fixation system.  The claim chart attached as **Exhibit J** includes screenshots that show how the videos direct surgeons to use the Accused Retractor Products in an infringing manner.

100.109.   On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Retractor Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '146 patent.

101.110.   In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Retractor Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination of such components outside of the United States in a manner that practices at least claim 1 of the '146 patent.

102.111.   ATEC's affirmative acts of active encouragement abroad include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Retractor Products which includes the; (2) teaching, instructing, and training surgeons how to use the Accused Retractor Products; and (3) supplying one or more components

26

of the Accused Retractor Products, in all instances to induce the combination of the components in an infringing manner abroad.

103.112.    ATEC is, thus, liable for infringement of the '146 patent pursuant to 35 U.S.C. § 271(f)(1).

104.113.    Unless enjoined by this Court, ATEC will continue to infringe the asserted claims of the '146 patent, and NuVasive will continue to suffer irreparable harm for which there is no adequate remedy at law.

105.114.    As a result of ATEC's infringement of one or more claims of the '146 patent, NuVasive has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

106.115.    On information and belief, at all times that infringement has occurred or will occur, ATEC had and has actual and/or constructive knowledge of the '146 patent.

107.116.    On information and belief, ATEC's infringement of one or more claims of the '146 patent is and has been willful and deliberate.

108.117.    NuVasive is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**THIRD CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. ~~10,660,628~~8,556,979**

109.118.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

~~110.    On information and belief, ATEC has infringed and continues to infringe at least claim 1 of the '628 patent by making, using, selling, and/or offering for sale the Accused Retractor Products, which are used by surgeons in an infringing manner.~~

~~111.    Claim 1 of the '628 patent recites:~~

27

A method for attaching a fixation system to the spine of a patient, the fixation system including at least two bone anchors and a spinal rod linking the at least two bone anchors, comprising the steps of:

connecting a first bone anchor to a first retractor blade, advancing the first bone anchor and first retractor blade together to a first spinal vertebra, and anchoring the first bone anchor through a pedicle of the first spinal vertebra;

connecting a second bone anchor to a second retractor blade, advancing the second bone anchor and second retractor blade together to a second spinal vertebra, and anchoring the second bone anchor through a pedicle of the second vertebra, wherein the second vertebra is separated from the first vertebra by an intervertebral disc space and the first vertebra, second vertebra, and intervertebral disc space comprise a first spinal level;

connecting the first retractor blade and the second retractor blade with a retractor body, the retractor body being positioned laterally away from the spine relative to the first and second retractor blades, operating the retractor body to expand an operative corridor formed between the first retractor blade and second retractor blade from the skin level of the patient to the spine;

linking the first bone anchor and the second bone anchor with the spinal rod.

112.   A claim chart showing how the accused Sigma and Invictus products are used to perform every step of asserted claim 1 of the '628 patent is attached as **Exhibit K**.

113.   In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '628 patent.

114.   As explained above, on information and belief ATEC had actual knowledge of the '628 patent prior to the filing of this Complaint. Additionally, by virtue of the filing of this Complaint, ATEC has actual knowledge of the '628 patent and knowledge that it is infringing the '628 patent and is, therefore, liable for future indirect infringement.

115.   With knowledge of the '628 patent, ATEC has and continues to induce infringement of the '628 patent by others, including surgeons, by actively encouraging them to use the Accused Retractor Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '628 patent.

28

116.   On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Retractor Products, knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '628 patent.

117.   ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '628 patent.

118.   ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Retractor Products; (2) teaching, instructing, and training surgeons how to use the Accused Retractor Products; and (3) supplying one or more components of the Accused Retractor Products.

119.   On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Retractor Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '628 patent.

120.   On information and belief, ATEC purposefully designed each of the infringing components of the Accused Retractor Products as part of the Accused Retractor Products for use in performing the infringing surgical spine procedure and for no other purpose.

121.   In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Retractor Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination and use of such components outside of the United States in a manner that practices claim 1 of the '628 patent.

122.   ATEC's affirmative acts of active inducement abroad include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Products;

29

1    (2) teaching, instructing, and training surgeons how to use the Accused Products; and

2    (3) supplying one or more components of the Accused Products, in all instances to

3    induce the combination of the components in an infringing manner abroad.

4    123.    Unless enjoined by this Court, ATEC will continue to infringe the '628

5    patent, and NuVasive will continue to suffer irreparable harm for which there is no

6    adequate remedy at law.

7    124.    As a result of ATEC's infringement of one or more claims of the '628

8    patent, NuVasive has been and continue to be injured in its business and property rights

9    and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an

10    amount to be determined at trial.

11    125.    On information and belief, at all times that infringement has occurred or

12    will occur, ATEC had and has actual and/or constructive knowledge of the '628 patent.

13    126.    On information and belief, ATEC's infringement of one or more claims of

14    the '628 patent is and has been willful and deliberate.

15    127.    NuVasive is entitled to damages pursuant to 35 U.S.C. § 284 and to an

16    award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

17                    **FOURTH CAUSE OF ACTION**

18              **INFRINGEMENT OF U.S. PATENT NO. 8,556,979**

19    128.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in

20    their entirety.

21    129.119.    On information and belief, ATEC has infringed and continues to

22    infringe at least claim 1 of the '979 patent by making, using, selling, and/or offering for

23    sale products and systems including, but not limited to, the Calibrate™ LTX (the

24    "Accused Spacer Products").

25    130.120.    Claim 1 of the '979 patent recites:

26    An intervertebral implant comprising:

27    a first endplate having an upper side and a lower side, the upper side of the first
      endplate including a textured surface;

28

30

a second endplate having an upper side and a lower side, the lower side of the second endplate including a textured surface;

a body portion having a first end, a second end, a first side portion connecting the first end and the second end, and a second side portion connecting the first end and the second end;

a translation member received between the first endplate and the second endplate,

the translation member including at least two first angled surfaces of which at least one of the two first angled surfaces is configured to engage a contact surface of the first endplate,

and at least two second angled surfaces of which at least one of the two second angled surfaces is configured to engage a contact surface of the second endplate,

wherein the at least two first angled surfaces are separated via a bridge that extends along a longitudinal length of the translation member,

wherein movement of the translation member causes at least one of the two first angled surfaces to push against the contact surface of the first endplate and at least one of the two second angled surfaces to push against the contact surface of the second endplate, thereby causing outward expansion of the first endplate and second endplate,

wherein the at least two first angled surfaces are sloped generally in a same direction.

131.121.    In violation of 35 U.S.C. § 271(a), ATEC has and continues to directly infringe one or more claims of the '979 patent.

132.122.    In particular, and without limitation, ATEC directly infringes the '979 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Spacer Products, without authorization.

133.123.    An exemplary claim chart showing how the accused Calibrate™ LTX product meets every element of claim 1 of the '979 patent is attached as **Exhibit L̶K**.

134.   In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '979 patent.

135.   By virtue of the filing of this Complaint, ATEC has actual knowledge of the '979 patent and knowledge that it is infringing the '979 patent and is, therefore, liable for future indirect infringement.

136.   With knowledge of the '979 patent, ATEC has and continues to induce jointly and separately the direct infringement of the '979 patent by others, including surgeons, by actively encouraging them to use the Accused Spacer Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '979 patent.

137.   On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Spacer Products, knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '979 patent.

138.   ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '979 patent.

139.   ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Spacer Products; (2) teaching, instructing, and training surgeons how to use the Accused Spacer Products; and (3) supplying one or more components of the Accused Spacer Products.

140.   On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Spacer Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '979 patent.

124.   ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Spacer Products in a manner that constitutes infringement of the '120 patent. **Exhibit L**. The IFUs provide that the Accused Spacer Products are "indicated for spinal fusion procedures from T1 to S1 in skeletally mature patients for the treatment of" multiple spinal disorders. *Id.* The IFUs also provide instructions for the expansion of the Accused Spacer Products when implanted in a patient. The IFUs also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to

32

"have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Spacer Products in an operation on a patient. *Id.*

125.  ATEC also publishes product literature that instructs surgeons on the use of the Accused Spacer Products. **Exhibit M**. The surgical technique guide provides detailed, step-by-step instructions concerning the preparation, implantation, and expansion of the Accused Spacer Products in patients during spinal surgery. *See, e.g.*, *id.* at 5 (providing step-by-step instructions for "interbody spacer insertion"), 6 (providing step-by-step instructions for "interbody spacer expansion"). The surgical technique guide explains to surgeons how to expand the Accused Spacer Products by "toggl[ing] the LTC interbody spacer . . . until the desired fit is achieved" and provides a detailed guide of the expansion ranges for the various Accused Spacer Products supplied by ATEC. *Id.* at 6–8.

141.126.    In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Spacer Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination of such components outside of the United States in a manner that practices at least claim 1 of the '979 patent.

142.127.    ATEC is, thus, liable for infringement of the '979 patent pursuant to 35 U.S.C. § 271(f)(1).

143.128.    Unless enjoined by this Court, ATEC will continue to infringe the asserted claims of the '979 patent, and Globus will continue to suffer irreparable harm for which there is no adequate remedy at law.

144.129.    As a result of ATEC's infringement of one or more claims of the '979 patent, Globus has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

145.130.    Globus is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## FOURTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. ~~FIFTH CAUSE OF ACTION INFRINGEMENT OF U.S. PATENT NO.~~ 8,518,120

146.131.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

147.132.    ~~On information and belief,~~ ATEC has infringed and continues to infringe at least claim 1 of the '120 patent by making, using, selling, and/or offering for sale the Accused Spacer Products.

148.133.    Claim 1 of the '120 patent recites:

An intervertebral implantation system comprising:

a first endplate having an upper side and a lower side;

a second endplate having an upper side and a lower side;

a body portion having a first end, a second end, a first side portion connecting the first end and the second end, and a second side portion connecting the first end and the second end;

a translation member received between the first endplate and the second endplate,

the translation member including at least two first angled surfaces of which at least one of the two first angled surfaces is configured to engage a contact surface of the first endplate

and at least two second angled surfaces of which at least one of the two second angled surfaces is configured to engage a contact surface of the second endplate,

wherein movement of the translation member causes at least one of the two first angled surfaces to push against the contact surface of the first endplate and at least one of the two second angled surfaces to push against the contact surface of the second endplate, thereby causing outward expansion of the first endplate and second endplate,

wherein the at least two first angled surfaces are sloped generally in a same direction.

149.134.    In violation of 35 U.S.C. § 271(a), ATEC has and continues to directly infringe one or more claims of the '120 patent.

34

150.135.    In particular, and without limitation, ATEC directly infringes the '120 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to the Calibrate™ LTX system, without authorization.

151.136.    An exemplary claim chart showing how the accused Calibrate™ LTX product meets every element of claim 1 of the '120 patent is attached as **Exhibit MN**.

152.    In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '120 patent.

153.    By virtue of the filing of this Complaint, ATEC has actual knowledge of the '120 patent and knowledge that it is infringing the '120 patent and is, therefore, liable for future indirect infringement.

154.    With knowledge of the '120 patent, ATEC has and continues to induce infringement of the '120 patent by others, including surgeons, by actively encouraging them to use the Accused Spacer Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '120 patent.

155.    On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Spacer Products, knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '120 patent.

156.    ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '120 patent.

157.    ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Spacer Products; (2) teaching, instructing, and training surgeons how to use the Accused Spacer Products; and (3) supplying one or more components of the Accused Spacer Products.

35

158.    On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Spacer Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '120 patent.

137.    ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Spacer Products in a manner that constitutes infringement of the '120 patent. **Exhibit L**. The IFUs provide that the Accused Spacer Products are "indicated for spinal fusion procedures from T1 to S1 in skeletally mature patients for the treatment of" multiple spinal disorders. *Id.* The IFUs also provide instructions for the expansion of the Accused Spacer Products when implanted in a patient. The IFUs also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to "have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Spacer Products in an operation on a patient. *Id.*

138.    ATEC also publishes product literature that instructs surgeons on the use of the Accused Spacer Products. **Exhibit M**. The surgical technique guide provides detailed, step-by-step instructions concerning the preparation, implantation, and expansion of the Accused Spacer Products in patients during spinal surgery. *See, e.g., id.* at 5 (providing step-by-step instructions for "interbody spacer insertion"), 6 (providing step-by-step instructions for "interbody spacer expansion"). The surgical technique guide explains to surgeons how to expand the Accused Spacer Products by "toggl[ing] the LTC interbody spacer . . . until the desired fit is achieved" and provides a detailed guide of the expansion ranges for the various Accused Spacer Products supplied by ATEC. *Id.* at 6–8.

159.139.    In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Spacer Products where such components are uncombined in whole or in part, in such a manner to

36

actively induce the combination of such components outside of the United States in a manner that practices at least claim 1 of the '120 patent.

160. ATEC's affirmative acts of active inducement abroad include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Products; (2) teaching, instructing, and training surgeons how to use the Accused Products; and (3) supplying one or more components of the Accused Products, in all instances to induce the combination of the components in an infringing manner abroad.

161.140.    Unless enjoined by this Court, ATEC will continue to infringe the asserted claims of the '120 patent, and Globus will continue to suffer irreparable harm for which there is no adequate remedy at law.

162.141.    As a result of ATEC's infringement of one or more claims of the '120 patent, Globus has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

163.142.    Globus is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**FIFTH CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. SIXTH CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. 9,039,771**

164. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

165. On information and belief, ATEC has infringed and continues to infringe at least claim 1 of the '771 patent by making, using, selling, and/or offering for sale the Accused Spacer Products, which are then used by spinal surgeons in an infringing manner.

166. Claim 15 of the '771 patent recites:

37

A surgical method comprising: introducing an expandable device into an intervertebral space in an unexpanded position;

wherein the device includes a first endplate having at least one ramped surface, a second endplate having at least one ramped surface,

and a translation member having first, second and third angled surfaces; and

moving the translation member such that it pushes against the ramped surface of the first endplate and the ramped surface of the second endplate, thereby causing the expandable device to expand into an expanded position;

wherein the first, second, and third angled surfaces contact either one of the first endplate or the second endplate;

and wherein the first, second, and third angled surfaces are spaced apart in a longitudinal axis and sloped in the same direction.

167. An exemplary claim chart showing how the exemplary accused Calibrate™ LTX product are used to perform every step of asserted claim 15 of the '771 patent is attached as **Exhibit N**.

168. In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 15 of the '771 patent.

169. By virtue of the filing of this Complaint, ATEC has actual knowledge of the '771 patent and knowledge that it is infringing the '771 patent and is, therefore, liable for future indirect infringement.

170. With knowledge of the '771 patent, ATEC has and continues to induce jointly and separately the direct infringement of claim 15 of the '771 patent by others, including surgeons, by actively encouraging them to use the Accused Spacer Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '771 patent.

171. On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Spacer Products, knowing, or being willfully blind to, the fact that the induced actions constitute infringement of the '771 patent.

38

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

172.    ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '771 patent.

173.    ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Spacer Products; (2) teaching, instructing, and training surgeons how to use the Accused Spacer Products; and (3) supplying one or more components of the Accused Spacer Products.

174.    On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Spacer Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the asserted claims.

175.    On information and belief, ATEC purposefully designed each of the infringing components of the Accused Spacer Products as part of the Accused Spacer Products for use in performing the infringing surgical spine procedure and for no other purpose.

176.    In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Spacer Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination of such components outside of the United States in a manner that practices at least claim 15 of the '771 patent.

177.    ATEC's affirmative acts of active inducement abroad include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Products; (2) teaching, instructing, and training surgeons how to use the Accused Products; and (3) supplying one or more components of the Accused Products, in all instances to induce the combination of the components in an infringing manner abroad.

178.   Unless enjoined by this Court, ATEC will continue to infringe the '771 patent, and Globus will continue to suffer irreparable harm for which there is no adequate remedy at law.

179.   As a result of ATEC's infringement of one or more claims of the '771 patent, Globus has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

180.   Globus is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## SEVENTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,204,974

181.143.   Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

182.144.   On information and belief, ATEC has infringed and continues to infringe at least claim 1 of the '974 patent by making, using, selling, and/or offering for sale products and systems including, but not limited to the Calibrate™ LTX (the "Accused Spacer Products").

183.145.   Claim 1 of the '974 patent recites:

An intervertebral implant comprising:

a first endplate;

a second endplate;

a translation member received between the first endplate and the second endplate,

the translation member including a first angled surface configured to engage a contact surface of the first endplate,

two stabilization members extending from the translation member, and

a body having a first side wall portion extending along a longitudinal axis of the implant and a second side wall portion extending along a longitudinal axis of the implant, each side wall portion having a slot, wherein each slot is configured to receive a portion of a respective one of said stabilization members,

40

wherein movement of the translation member causes the first angled surface to push against the contact surface of the first endplate thereby causing outward expansion of the first endplate and second endplate,

wherein the translation member includes an opening for receiving an actuation member, the actuation member being configured not to extend beyond the first angled surface of the translation member when the first and second endplates are in an unexpanded state.

184.146.    In violation of 35 U.S.C. § 271(a), ATEC has and continues to directly infringe one or more claims of the '974 patent.

185.147.    In particular, and without limitation, ATEC directly infringes the '974 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Spacer Products, without authorization.

186.148.    An exemplary claim chart showing how the accused Calibrate™ LTX product meets every element of claim 1 of the '974 patent is attached as **Exhibit O**.

187.    In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '974 patent.

188.    By virtue of the filing of this Complaint, ATEC has actual knowledge of the '974 patent and knowledge that it is infringing the '974 patent and is, therefore, liable for future indirect infringement.

189.    With knowledge of the '974 patent, ATEC has and continues to induce jointly and separately the direct infringement of the '974 patent by others, including surgeons, by actively encouraging them to use the Accused Spacer Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '974 patent.

190.    On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Spacer Products, knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '974 patent.

41

191.   ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '974 patent.

192.   ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Spacer Products; (2) teaching, instructing, and training surgeons how to use the Accused Spacer Products; and (3) supplying one or more components of the Accused Spacer Products.

193.   On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Spacer Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '974 patent.

149.   ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Spacer Products in a manner that constitutes infringement of the '120 patent. **Exhibit L**. The IFUs provide that the Accused Spacer Products are "indicated for spinal fusion procedures from T1 to S1 in skeletally mature patients for the treatment of" multiple spinal disorders. *Id.* The IFUs also provide instructions for the expansion of the Accused Spacer Products when implanted in a patient. The IFUs also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to "have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Spacer Products in an operation on a patient. *Id.*

150.   ATEC also publishes product literature that instructs surgeons on the use of the Accused Spacer Products. **Exhibit M**. The surgical technique guide provides detailed, step-by-step instructions concerning the preparation, implantation, and expansion of the Accused Spacer Products in patients during spinal surgery. *See, e.g., id.* at 5 (providing step-by-step instructions for "interbody spacer insertion"), 6 (providing step-by-step instructions for "interbody spacer expansion"). The surgical

42

technique guide explains to surgeons how to expand the Accused Spacer Products by "toggl[ing] the LTC interbody spacer . . . until the desired fit is achieved" and provides a detailed guide of the expansion ranges for the various Accused Spacer Products supplied by ATEC. *Id.* at 6–8.

194.151.    In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Spacer Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination of such components outside of the United States in a manner that practices at least claim 1 of the '974 patent.

195.152.    ATEC is, thus, liable for infringement of the '974 patent pursuant to 35 U.S.C. § 271(f)(1).

196.153.    Unless enjoined by this Court, ATEC will continue to infringe the asserted claims of the '974 patent, and Globus will continue to suffer irreparable harm for which there is no adequate remedy at law.

197.154.    As a result of ATEC's infringement of one or more claims of the '974 patent, Globus has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

198.155.    Globus is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## SIXTH CAUSE OF ACTION

## EIGHTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 11,890,203

199.156.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs in their entirety.

200.157.    On information and belief, ATEC has infringed and continues to infringe at least claim 1 of the '203 patent by making, using, selling, and/or offering for

43

sale products and systems including, but not limited to the ~~Calibrate™ LTX (the~~ ~~"Accused Spacer Products").~~.

~~201.~~158.   Claim 1 of the '203 patent recites:

An intervertebral implant configured to be inserted into an intervertebral space, comprising:

a body having first and second ends and first and second sides connecting the first and second ends, the first end comprising angled surfaces configured to distract adjacent vertebral bodies when the implant is inserted into the intervertebral space;

a first endplate disposed on an upper side of the body;

a second endplate disposed on a lower side of the body;

a translator disposed in the body, having at least two expansion portions connected by at least one bridge portion, and coupled to the first endplate such that the at least two expansion portions each engage corresponding surfaces of the first endplate and corresponding surfaces of the second endplate,

an actuator screw disposed at least partially in the body and comprising external threading for rotatably coupling to corresponding internal threading formed along the translator,

rotation of the actuator screw in a first direction causing the translator and the at least two expansion portions to longitudinally translate which causes the first endplate to move from a contracted state to an expanded state,

wherein in the contracted state, the first endplate relative to the second endplate is at a first angle, and in the expanded state, the first endplate relative to the second endplate is at a second angle greater than the first angle,

wherein the at least two expansion portions longitudinally translate in the same direction when the translator longitudinally translates.

~~202.~~159.   In violation of 35 U.S.C. § 271(a), ATEC has and continues to directly infringe one or more claims of the '203 patent.

~~203.~~160.   In particular, and without limitation, ATEC directly infringes the '203 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Spacer Products, without authorization.

~~204.~~161.   An exemplary claim chart showing how the accused Calibrate™ LTX product meets every element of claim 1 of the '203 patent is attached as **Exhibit P**.

205.  In violation of 35 U.S.C. § 271(b), ATEC has and continues to induce infringement of at least claim 1 of the '203 patent.

206.  By virtue of the filing of this Complaint, ATEC has actual knowledge of the '974 patent and knowledge that it is infringing the '203 patent and is, therefore, liable for future indirect infringement.

207.  With knowledge of the '203 patent, ATEC has and continues to induce jointly and separately the direct infringement of the '203 patent by others, including surgeons, by actively encouraging them to use the Accused Spacer Products in an infringing manner, with the specific intent to induce such actions knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '203 patent.

208.  On information and belief, ATEC had and continues to have specific intent to induce surgeons to use the Accused Spacer Products, knowing, or being willfully blind to the fact, that the induced actions constitute infringement of the '203 patent.

209.  ATEC has and continues to actively encourage others, including surgeons, to directly infringe the '203 patent.

210.  ATEC's affirmative acts of active inducement include, among other things: (1) publishing surgical techniques, conducting organized surgical training courses, and engaging in other marketing activities, to promote the Accused Spacer Products; (2) teaching, instructing, and training surgeons how to use the Accused Spacer Products; and (3) supplying one or more components of the Accused Spacer Products.

162.  ATEC provides surgeons with Instructions for Use "IFUs" which direct surgeons to use the Accused Spacer Products in a manner that constitutes infringement of the '120 patent. **Exhibit L**.  The IFUs provide that the Accused Spacer Products are "indicated for spinal fusion procedures from T1 to S1 in skeletally mature patients for the treatment of" multiple spinal disorders. *Id.*  The IFUs also provide instructions for the expansion of the Accused Spacer Products when implanted in a patient.  The IFUs

45

also instruct surgeons on the "warnings/cautions/precautions" and direct surgeons to "have a complete understanding of the surgical technique, system indications, contraindications, warnings, and cautions, as well as functions and limitations of the instruments" when using the Accused Spacer Products in an operation on a patient. *Id.*

163.   ATEC also publishes product literature that instructs surgeons on the use of the Accused Spacer Products. **Exhibit M**. The surgical technique guide provides detailed, step-by-step instructions concerning the preparation, implantation, and expansion of the Accused Spacer Products in patients during spinal surgery. *See, e.g.,* *id.* at 5 (providing step-by-step instructions for "interbody spacer insertion"), 6 (providing step-by-step instructions for "interbody spacer expansion"). The surgical technique guide explains to surgeons how to expand the Accused Spacer Products by "toggl[ing] the LTC interbody spacer . . . until the desired fit is achieved" and provides a detailed guide of the expansion ranges for the various Accused Spacer Products supplied by ATEC. *Id.* at 6–8.

~~211.~~164.   On information and belief, following ATEC's active encouragement, surgeons have used and continue to use the Accused Spacer Products in performing surgical spine procedures and thus have directly infringed and continue to directly infringe the '203 patent.

~~212.~~165.   In violation of 35 U.S.C. § 271(f)(1), on information and belief, ATEC has been and continues to supply or cause to be supplied in or from the United States all or a substantial portion of the components of the Accused Spacer Products where such components are uncombined in whole or in part, in such a manner to actively induce the combination of such components outside of the United States in a manner that practices at least claim 1 of the '203 patent.

~~213.~~166.   ATEC is, thus, liable for infringement of the '203 patent pursuant to 35 U.S.C. § 271(f)(1).

46

214.167.    Unless enjoined by this Court, ATEC will continue to infringe the asserted claims of the '203 patent, and Globus will continue to suffer irreparable harm for which there is no adequate remedy at law.

215.168.    As a result of ATEC's infringement of one or more claims of the '203 patent, Globus has been and will continue to be injured in its business and property rights and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

216.169.    Globus is entitled to damages pursuant to 35 U.S.C. § 284 and to an award of attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendant ATEC as follows:

A.    Declaring that ATEC has infringed one of more claims of each of the Asserted Patents;

B.    Declaring that ATEC has willfully infringed the '184, '146, and '628'146 patents;

C.    Permanently enjoining ATEC, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from further infringing, contributing to and/or inducing the infringement of each of the Asserted Patents, in accordance with 35 U.S.C. § 283;

D.    Awarding Plaintiffs damages in an amount adequate to compensate Plaintiffs for ATEC's infringement, in accordance with 35 U.S.C. § 284;

E.    Awarding enhanced damages, in accordance with 35 U.S.C. § 284;

F.    Awarding Plaintiffs attorneys' fees and costs, in accordance with 35 U.S.C. § 285; and

G.    Granting such other and further relief as this Court may deem just and appropriate.

1

# DEMAND FOR JURY TRIAL

2      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

3  demand a trial by jury of this action.

4

5

6  Date: ~~June 12, 2025~~January 5, 2026        **PROSKAUER ROSE LLP**

7

8                                              */s/ Colin Cabral*

9                                              COLIN CABRAL (SBN 296913)
                                               JAMES ANDERSON (BBO # 693781)
10                                             Proskauer Rose LLP
                                               One International Place
11                                             Boston, MA 02110
                                               ccabral@proskauer.com
12                                             jaanderson@proskauer.com
                                               Telephone: 617-526-9600

13                                             ELIZABETH SHRIEVES (DC #1645332)
14                                             Proskauer Rose LLP
                                               1001 Pennsylvania Ave, N.W.
15                                             Suite 600 South
                                               Washington, DC 20004
16                                             eshrieves@proskauer.com
                                               Telephone: 202-416-6800

17

18                                             SETH H. VICTOR (SBN 329341)
                                               Proskauer Rose LLP
19                                             2029 Century Park East, Suite 2400
                                               Los Angeles, CA 90067
20                                             svictor@proskauer.com
                                               Telephone: 310-557-2900

21

22                                             *Attorneys for Plaintiffs*
                                               *Globus Medical, Inc. and NuVasive, LLC*

23

24

25

26

27

28

48